2011 Ark. App. 544

**Charles Len HALLIDAY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–269.**

Court of Appeals of Arkansas.

Sept. 21, 2011.

William Owen James Jr., Little Rock, for the appellant.

Dustin McDaniel, Atty. Gen., Leaann J. Irvin, Office of the Attorney General, Little Rock, for the appellee.

ROBERT J. GLADWIN, Judge.

On August 13, 2010, a Marion County jury convicted appellant Charles Halliday of sexual assault in the first degree and sexual indecency with a child, for which he was sentenced to twelve years' and three years' imprisonment, respectively, to be served consecutively in the Arkansas Department of Correction. On appeal, he challenges the sufficiency of the evidence supporting his two convictions. He also claims that the circuit court erred by submitting a jury instruction on sexual indecency with a child because it was not a lesser-included offense of sexual assault in the first degree. We affirm.

### I. Sufficiency of the Evidence

#### A. Standard of Review

A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Estrada v. State*, 2011 Ark. 3, 376 S.W.3d 395. The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, appellate courts review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.*

A sexual-assault victim's testimony may constitute substantial evidence to sustain a conviction for sexual assault. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). The victim's testimony need not be corroborated, and the victim's testimony alone, describing the sexual contact, is enough for a conviction. *See Colburn v. State*, 2010 Ark. App. 587, 2010 WL 3582441. The credibility of witnesses is a matter for the jury's consideration. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008). Furthermore, the jury need not believe the defendant's own self-serving testimony, and it is free to believe all or part of a victim's testimony as it sees fit. *See Chavez v. State*, 2010 Ark. App. 161, 2010 WL 546445.

#### B. Sexual Assault in the First Degree

To be guilty of sexual assault in the first degree under Arkansas Code Annotated section 5–14–124 (Repl.2006), appellant must have engaged in sexual relations with a person under eighteen years of age, and appellant must have been a temporary caretaker, or in a position of trust or au-

thority over the victim. Appellant does not dispute that there is sufficient evidence to support that he engaged in sexual relations with a person under eighteen years of age; however, he does dispute that he was a person in a position of trust or authority over, or a temporary caretaker of, the victim.

### 1. *Position of Trust or Authority Over The Victim*

■ Arkansas courts have had opportunities to define the phrase "position of trust or authority over the victim" and have consistently declined to do so, instead finding that case-specific facts are included in the definition. *See May v. State*, 94 Ark. App. 202, 228 S.W.3d 517 (2006); *Murphy v. State*, 83 Ark. App. 72, 117 S.W.3d 627 (2003). Appellant argues that there was never any testimony that he was under any obligation or responsibility with regard to the victim or that any authority was conferred upon him. Similarly, with regard to "position of authority," appellant claims that there was no testimony that he had any right or ability to control or command the victim. To the contrary, testimony by rodeo-arena owner Mr. Rand was that appellant did not have any authority over the victim. Without such evidence, appellant maintains that the jury merely speculated that he had power or control because of his age in relation to the victim. He claims that to allow the jury to infer control based on age is to render section 5–14–124(a)(1)–(3) unnecessary because the victim is necessarily young.

We disagree. The victim testified that she met appellant at around the age of twelve when she decided that she wanted to ride horses. She stated that he was "a figure that [she] would look up to ... [she] trusted him," and that appellant was like a teacher to her. She explained that in the beginning of their relationship, ap-pellant taught her to rodeo and trail ride but then the relationship became more of a boyfriend-girlfriend type of relationship. The victim testified that appellant initiated the sexual part of the relationship. She testified that on December 30, 2008, when she was fourteen years old, and after a day of horse training, appellant drove her to the living quarters of his business. When they arrived, she and appellant had sexual intercourse but were interrupted by appellant's wife. The victim testified that immediately thereafter, appellant stated that he was ruined and that his wife was going to put him in prison.

Evidence indicated that later that night, the victim met and spoke with Investigator Vacco at Baxter Regional Medical Center. The victim told Investigator Vacco that she did not have sex with appellant; however, she later indicated that she had lied to protect appellant because she cared for him and did not want to see anything bad to happen to him. Testimony indicated that after this incident, the victim continued to have contact with appellant and had sex with him again sometime near the end of January or beginning of February 2009.

The victim's father specifically testified that appellant was helping his daughter with riding and learning about the rodeo. He explained that he knew his daughter was spending time with appellant, but that he trusted appellant as the adult watching his daughter.

Appellant testified that he would pick the victim up and take her home from the horse training and that she "ran around with [him] all the time[,] went hunting with [him] and [his] friends." He acknowledged that if he took the victim to the rodeo he was responsible for taking her home.

With regard to the phrase "position of trust or authority over the victim," this court has specifically stated:

Where a relationship raises a strong inference of trust and supervision, and where the appellant's function in the relationship could be characterized as a minimum to be that of a chaperone, th[at] meets the statutory threshold.

*May,* 94 Ark. App. at 206, 228 S.W.3d at 521. In the instant case, we hold that, at a minimum, appellant was a chaperone and, thus, in a position of trust or authority over the victim. Because the jury need not have believed his own self-serving testimony, it was within the jury's province to determine appellant's guilt based on his position of trust or authority over the victim. *See May, supra.*

### 2. Temporary Caretaker of the Victim

"Temporary caretaker" was defined by the Arkansas Supreme Court in *Bowker v. State,* 363 Ark. 345, 214 S.W.3d 243 (2005). The supreme court stated that "temporary" is defined as "lasting for a time only; existing or continuing for a limited (usually short) time; transitory." *Id.* at 353, 214 S.W.3d at 248. The court defined "caretaker" as "a person, usually not a parent, who exercises custodial responsibility for a child or for an elderly or disabled person." *Id.*

Appellant submits that there is no evidence that he was exercising "custodial responsibility" for the victim. He claims that he did not act as a parent would to the victim, and there was no evidence that he was expected to be a parent to the victim. He exhibited no control or governance over the victim, and he urges that the evidence should not be sufficient merely because he is an older individual spending time with a younger person.

To the extent appellant makes a separate claim regarding his status as a temporary caretaker for the victim, we hold that his claim, again, fails for the same above-noted reasons. The victim was a fourteen-year-old girl who could not transport herself to and from the rodeo and rodeo training. She was still dependent on adult care and supervision, and her parents entrusted appellant with that care and supervision. *See Murphy, supra.* The relationship was at a minimum that of a babysitter or chaperone, which suffices to establish appellant as a temporary caretaker or a person in a position of trust or authority over the victim. *See Cluck v. State,* 2009 Ark. App. 381, 2009 WL 1362863. Accordingly, we affirm on this point.

### C. Sexual Indecency with a Child [1]

In order to be guilty of sexual indecency with a child under Arkansas Code Annotated section 5–14–110(a) (Supp.2007), appellant must be eighteen years of age or older and have solicited a person who is less than fifteen years of age or who is represented to be less than fifteen years of age in either sexual intercourse, deviate sexual activity, or sexual contact. Appellant does not dispute that there is sufficient evidence that he is over eighteen years of age and that the victim was under fifteen years of age. However, he contends that there is no evidence from which a jury could determine that between January 1, 2009, and February 13, 2009, he solicited the victim to engage in sexual intercourse, deviate sexual activity, or sexual activity.

The victim testified that, except for the first time, she initiated sex with appellant. It is indisputable that the first time the two had sex was prior to January 1, 2009, because count one is alleged to have

---

1. Appellant's sufficiency challenge to sexual indecency with a child is his last point, but the court must consider it before the jury-instruction issue. *See Grillot v. State,* 353 Ark. 294, 107 S.W.3d 136 (2003).

happened on December 30, 2008. Appellant submits that the jury was free to disbelieve her, and absent her testimony there is no testimony as to who initiated the sexual encounter for which appellant was convicted of sexual indecency with a child. Appellant argues that the mere fact that the two engaged in a sexual encounter is not sufficient because the statute clearly requires that appellant must have solicited the victim to engage in sexual relations.

■ Arkansas courts have looked to the definition of solicitation with respect to sexual-indecency cases and have determined that the verb "solicit" means, among other things, to entreat or importune, to endeavor to obtain by asking, or to seek eagerly or actively. *See Haralson v. State,* 2010 Ark. App. 215, 2010 WL 724312. The statute does not require that the State establish that appellant initiated the specific act of sexual intercourse or contact, as appellant contends. This court may examine appellant's words and actions over a period of time in order to find substantial evidence that he actively sought the victim's participation in sexual activity. *Id.* Here, among other things, testimony indicated that appellant initiated the first episode of sexual intercourse; he provided the victim with transportation to his home and other locations; the victim claimed to be in love with and to care about appellant; and appellant made the circumstances such that sexual intercourse could take place. Based on the ⌊₈foregoing, we hold that substantial evidence supports the circuit court's finding that appellant solicited the victim, which accordingly supports affirming appellant's conviction.

## II. *Submission of Jury Instruction on Sexual Indecency with a Child*

### A. Standard of Review

This court has held that, in order to be timely, objections to jury instructions must be made either before or at the time the instruction is given, and the failure to do so constitutes a waiver of that argument on appeal, *Campbell v. State,* 2010 Ark. App. 356, 2010 WL 1710015, and, consequently, cannot be the basis for an exception to that rule under *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980). *See Buckley v. State,* 349 Ark. 53, 76 S.W.3d 825 (2002).

### B. Discussion

Appellant was charged by felony information with sexual assault in the first degree. The circuit court also submitted to the jury a verdict form on sexual indecency with a child under section 5–14–110(a) (Repl.2009), despite the fact that appellant was never charged with this offense and it is not a lesser-included charge.

Arkansas Code Annotated section 5–1–110(b) (Repl.2009) sets forth the test for determining when an offense is included in another offense. An offense is a lesser-included offense if it

(1) Is established by proof of the same or less than all of the elements required to establish the commission of the offense charged;

(2) Consists of an attempt to commit the offense charged or to commit an offense otherwise included within the offense charged; or

(3) Differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish the offense's commission.

⌊₉Here, appellant argues that the offense of sexual indecency with a child differs markedly from the offense of sexual assault in the first degree and is not a lesser-included offense. First, sexual indecency with a

child requires solicitation, which is not required for sexual assault in the first degree. Additionally, sexual assault in the first degree requires that the sexual conduct occur but not that the defendant solicit the conduct. Sexual indecency with a child requires proof that the victim was less than fifteen years old, whereas sexual assault in the first degree only requires that the victim was less than eighteen years old.

 It is unclear who submitted this jury instruction; however, appellant acknowledges that there was no objection. He asks the court to apply the *Wicks* exception for addressing issues not objected to at trial. *See Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). Appellate courts will address errors not objected to in the following scenarios:

> (1) when the trial court fails to bring the jury's attention to a matter essential to its consideration of the death penalty itself; (2) when the defense counsel has no knowledge of the error and hence no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly; and (4) Ark. R. Evid. 103(d) provides that the appellate court is not precluded from taking notice of errors affecting substantial rights, although they were not brought to the attention to the trial court.

*Id.* at 395, 108 S.W.3d at 599. Appellant requests that this court address the issue of the improperly instructed jury under reasons three and four. He contends that the improper instruction was flagrant and prejudiced him, resulting in a conviction where there otherwise would not have been one. Additionally, this court may take notice of this error under Arkansas Rule of Evidence 103(d) (2010) because the error affects substantial rights—specifically that he was convicted and sentenced on a crime he was neither charged with nor was a lesser-included of an offense charged.

 The *Wicks* exception is a narrow one and applies when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly. *Rackley v. State*, 371 Ark. 438, 267 S.W.3d 578 (2007). The third *Wicks* exception has only been applied to cases in which a defendant's fundamental right to a trial by a jury is at issue, *see Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006), which was not at issue in the case at bar. Although appellant claims that the error was so flagrant that the circuit court should have on its own motion instructed the jury correctly, we note that the circuit court gave the jury instructions that it, and the parties, deemed to be correct. Appellant has failed to indicate the manner in which the error was so flagrant and prejudicial to have triggered a duty on behalf of the circuit court when the instruction was proffered and agreed upon by the parties.

 Despite appellant's claim that the fourth *Wicks* exception, which addresses a violation of substantial rights based on the admission or exclusion of evidence, is applicable, we disagree. The fourth *Wicks* exception has its roots in Arkansas Rule of Evidence 103(d), which provides that "[n]othing in this rule precludes taking notice of errors affecting substantial rights, although they were not brought to the attention of the court." Our supreme court has warned against relying on this exception, stating that it "is negative, not imposing an affirmative duty, and at most applies only to a ruling which admits or excludes evidence." *Buckley*, 349 Ark. at 65–66, 76 S.W.3d at 833 (quoting *Wicks*,

270 Ark. at 786, 606 S.W.2d at 370) The giving of an allegedly erroneous jury instruction is not a ruling on the admission or exclusion of evidence in relation to the fourth *Wicks* exception, and we hold that appellant's arguments regarding the allegedly erroneous jury instruction are not preserved for our review.

Affirmed.

WYNNE and GRUBER, JJ., agree.